## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

DIANE SMITH, individually and as )
guardian for A.K., S.K., and M.K., )
                                    )      JURY TRIAL DEMANDED
          Plaintiffs, )
                                    )
    v.                              )      Civil Action No.
                                    )
                                    )
                                    )
STATE OF DELAWARE, DEPARTMENT )
OF SERVICES FOR )
CHILDREN, YOUTH & THEIR )
FAMILIES, DIVISION OF FAMILY )
SERVICES; KATHLEEN FINN, )
individually and in her official capacity; )
HOME HEALTH SPECIALISTS; DORIS )
ELLIOTT; and LINDA BRASBURGER, )
                                    )
         Defendants. )

## COMPLAINT

## INTRODUCTION

        This is a federal question action, pursuant to 28 U.S.C. §§ 1331 and 1343, for damages alleging, among other things, violations of the plaintiffs' civil rights, arising out of the defendants' malicious and willful conspiracy to interfere with plaintiff Diane Smith's ("Smith") custody of her children, and Defendant Kathleen Finn's ("Finn") willful defiance of a court order.

        1.      Smith is an individual and all times relevant to this complaint has been a resident of New Castle County, State of Delaware, residing at 2001 Floral Drive, Wilmington, DE 19810.

2.      Plaintiff A.K. ("A.K.") is an individual and all times relevant to this complaint has been a resident of New Castle County, State of Delaware, residing at 2001 Floral Drive, Wilmington, DE 19810.

3.      Plaintiff S.K. ("S.K.") is an individual and all times relevant to this complaint has been a resident of New Castle County, State of Delaware, residing at 2001 Floral Drive, Wilmington, DE 19810.

4.      Plaintiff M.K. ("M.K.") is an individual and all times relevant to this complaint has been a resident of New Castle County, State of Delaware, residing at 2001 Floral Drive, Wilmington, DE 19810.

5.      Defendant State of Delaware, Department of Services for Children, Youth & Their Families, Division of Family Services ("DFS") is a state agency of the State of Delaware created by state law.  Defendant DFS may be served by serving its principal place of business at 1825 Faulkland Road, Wilmington, DE 19805.  DFS conducts business in the State of Delaware relevant to this dispute.

6.      Defendant Kathleen Finn ("Finn") was at all times relevant to this complaint a Family Service Specialist employed by DFS.  Finn conducted business in the State of Delaware relevant to this dispute.

7.      Defendant Home Health Specialists ("Home Health Specialists") is a home nursing care agency.  Home Health Specialists may be served at their principal business address of 306 East Baltimore Avenue, Media, PA 19063.  Home Health Specialists conducted business in the State of Delaware relevant to this dispute.

8.     Defendant Doris Elliott ("Elliott") was or is an employee of Home Health Specialists.  Elliott may be served at 339 E. Woodlyn Circle, Ridley Township, PA 19094.  Elliott conducted business in the State of Delaware relevant to this dispute.

9.     Defendant Linda Brasburger ("Brasburger" and collectively with Elliott, the "Nurses".  The Nurses, collectively with Finn and DFS, are referred to as the "Defendants") was or is an employee of Home Health Specialists.  She may be served at 1504 N. Harrison St., Wilmington, DE 19809.  Brasburger conducted business in the State of Delaware relevant to this dispute.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 in that it involves a federal question and a federal statute.  This Court has supplemental jurisdiction to hear matters arising under State law pursuant to 28 U.S.C. § 1367.

11.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 where a substantial part of the events or omissions giving rise to the claim occurred.

## ALLEGATIONS COMMON TO ALL COUNTS

12.     Smith is a registered nurse licensed in the State of Delaware for in excess of 10 years.  At the time of the incidents giving rise to this complaint, Smith was employed as the staff developer at Hockessin Hills where she had worked since August of 2005.

13.     Plaintiffs A.K., S.K., and M.K. (collectively the "Children") are the natural born children of Smith.  At all times relevant to this complaint, Smith shared legal custody over the Children with her ex-husband.

14.     The Nurses rendered services as home health care nursing providers in Smith's home beginning February, 2001. The Nurses' services were paid for by Smith's insurance company and Medicare. Initially, the Nurses, Smith and the Children were like family.

15.     In the weeks leading up to November, 2005, Smith and the Nurses began disagreeing on what was best for the Children. The Nurses became unusually and in a concerning manner attached to the Children. The Nurses over-stepped their bounds, rearranged the home and exercised free reign over the home. The Nurses attempted to take over the parenting and raising of the Children. This caused significant disagreement between Smith and the Nurses. Elliott struck M.K. on at least one occasion. The Children were terrified of Elliott and would cry when they knew she would be caring for them. Elliott referred to herself as "Mom" to the kids. This behavior was witnessed and reported to Home Health Specialists by Mia Heutt, a nurse, but Home Health Specialists never investigated the report and never notified Smith of the report.

16.     On November 4, 2005, Smith made arrangements to go away for one night, to Wayne, PA, one-half hour away from home.

17.     Prior to leaving for the night of November 4, 2005, Smith made arrangements with family to care for the Children during her absence. At all times during Smith's planned absence, when the Nurses were not going to be providing care for the Children, Smith's family members planned to watch the Children. Such persons were trained by A.I. DuPont hospital or Smith and the Nurses with respect to the administration of lifesaving procedures in the event one of the Children was in distress.

18.     On numerous occasions other than November 4, 2005, the Children were supervised by non-medical staff. Among other persons, Leslie Smith, Stacey Galperin and

members of Smith's and her ex-husband's family watched the Children, with the Nurses' awareness, without the Nurses' objection, and at the Nurses' convenience.

19.    During the afternoon of November 4, 2005, during a period of time in which Brasburger was supposed to have been providing services and watching the Children, the Nurses called DFS and stated the Children were left home and in danger. They also stated, despite knowledge to the contrary, there was not going to be appropriate supervision of the Children through the remainder of Smith's planned absence. The Nurses informed DFS that Smith was not feeding the Children, was beating the Children, neglected the Children, and was not providing medical care to the Children. The Nurses knew or should have known such statements were false. On information and belief, the Nurses, in bad faith and/or in reckless disregard for the truth, intentionally fabricated these statements in order to take the Children from Smith and/or to harm Smith or the Children.

20.    The staff of A.I. DuPont Hospital determined the Children were not malnourished or otherwise in distress.

21.    Smith immediately returned home upon being notified DFS was called.

22.    Finn and the Nurses collaborated and/or conspired with the purpose of removing Smith's custody of the Children and/or to harm Smith or the Children. The Nurses were jealous of Smith. Each stated she wanted additional children. S.K.'s surgery was scheduled for early 2006. The Nurses knew when S.K.'s surgery was complete they would lose their assignment in the Smith household.

23.    In November 2005, Finn, collaborating with the Nurses, filed an emergency *ex parte* motion in the Family Court for temporary custody of the Children to be granted to DFS. It alleged the Children were left with an unsuitable caretaker, Smith hit them

with objects, two of the Children have special medical needs and M.K. has behavioral issues. It alleges the Nurses determined the caretakers for the weekend had no medical training. It also alleges the caretaker had a DUI conviction, and the mother would not return until Saturday night. The emergency *ex parte* custody motion was filed based upon false information provided by the Nurses.

24.    Prior to Smith's departure for the weekend, the nurses knew for weeks in advance who would be providing care to the Children. However, only after Smith left did the Nurses call DFS.

25.    The Nurses' statements to DFS were misleading because, among other things, the uncle who was to watch the Children was not the only family member responsible for watching the Children during Smith's absence. Leslie Smith, Smith's former father-in-law, planned to care for the Children during Smith's absence. Each was trained by A.I. DuPont or Smith and the Nurses.

26.    A hearing on the Petition for Custody was held on November 16, 2005 before Judge William Chapman. Temporary custody of the Children was granted to DFS with Smith granted visitation. The hearing was held *ex parte*.

27.    On December 13, 2005, the State of Delaware Department of Justice moved the Court to rescind DFS' custody, and return custody back to Smith and her ex-husband with residential placement with Smith. The Motion to Rescind Custody states, among other things, that Smith "is well versed in the medical care required by the Children, and the Children will be better off in a familiar environment."

28.    The Motion to Rescind Custody also states that "since the date [A.K., S.K., and M.K.] returned home to their mother, no problems have existed."

6

29.    On December 22, 2005, Judge William Chapman granted a preliminary protective hearing order providing that the Children were to be placed in the home of Smith and Smith's mother. It also found that continuing the Children's residence in Smith's is not contrary to their best welfare.

30.    On January 2, 2006, Finn filed an affidavit and moved the Family Court to place Smith on the Child Protection Registry (the "Registry") at Child Protection Level III pending a final order on a Petition for Substantiation. On January 15, 2006, the Family Court reviewed and denied Finn's request to place Smith on the Registry.

31.    On January 27, 2006, Judge Chapman rescinded full custody of the Children to their parents, with primary residential placement with Smith.

32.    Smith was not arrested for her alleged child abuse.

33.    Irrespective of Judge Chapman's order to the contrary, Finn undertook efforts to have Smith placed, and Smith was placed, on the Registry.

34.    On February 16, 2006, attorney Richard Galperin wrote to James R. Adams, Esquire of the Department of Justice seeking to have Smith removed from the Registry. On July 28, 2006, attorney Rich Galperin then contacted Deputy Attorney General Anthony V. Longo with respect to the removal of Smith's name from the Registry. On July 28, 2006, Deputy Attorney General Anthony Long informed attorney Rich Galperin Smith's name was removed from the Registry pending a substantiation hearing. On August 14, 2006, Deputy Attorney General Anthony Longo informed Rich Galperin after confirming with DFS, DFS would not pursue substantiation against Smith. Therefore, Smith was told her name was not going to be placed back on the Registry.

35.     On Tuesday, February 14, 2006, the News Journal wrote an article highlighting Smith's exemplary efforts to care for the Children.  The article was set up by Smith's former employer as an accolade.

36.     After S.K.'s surgery in February, 2006, Smith and the Children stayed with S.K. in Cincinnati, Ohio until April 8, 2006.  In or around August, S.K. recovered sufficiently such that Smith could return to work.

37.     Smith was offered her old job back in September or October 2006 at Hockessin Hills.  Her job offer subsequently revoked upon Hockessin Hills becoming aware Smith had been at one time placed on the Registry.

38.     Smith has since applied for other comparable jobs and was turned down because her name was at one time on the Registry.

39.     Smith lost significant pay, benefits and opportunities as a result of being placed on the Registry.

40.     DFS is liable for the acts of Finn on the basis of respondeant superior.  At all times Finn acted as the agent, servant or employee of DFS and as such DFS is vicariously liable for her action.

41.     Home Health Specialists is responsible for the actions of the Nurses on the basis of respondeant superior.  At all times the Nurses acted as the agent, servant or employee of Home Health Specialists, and as such Home Health Specialists is vicariously liable for their actions.

## COUNT I

### FALSE IMPRISONMENT – AGAINST ALL DEFENDANTS

42.     Plaintiffs repeat and re-allege paragraphs 1 through 41 as if fully set forth herein.

43.     The Defendants willfully and intentionally confined the Children within fixed boundaries.  The Children were contained within physical barriers and unfree to leave.

44.     The Defendants willfully and intentionally caused the Children to be confined within fixed boundaries.  The children became hysterical.

45.     The Children were conscious and aware of the fact they were confined.

46.     The Children were harmed by their confinement and suffered physical manifestations.

47.     The Children submitted to the threat of physical force or duress.

48.     The Defendants acted with malice.

49.     The Defendants intended to affect the Children and/or Smith.

50.     Each Defendant instigated and/or participated in the confinement.

51.     Each of the Defendants knew or should have known the allegations of child abuse were falsified.  Each of the Defendants acted in the reckless disregard, and in bad faith, in separating the Children and Smith, and removing the Children from Smith's custody.

52.     The Children and Smith were damaged by the false imprisonment in an amount to be proven at trial.

## COUNT II

### NEGLIGENCE (AGAINST THE NURSES AND HOME HEALTH SPECIALISTS)

53.    The plaintiffs repeat and re-allege paragraph 1 through 52 as if fully set forth herein.

54.    The Nurses have a duty to provide accurate and truthful information to DFS.

55.    The Nurses breached this duty by providing inaccurate information to DFS.

56.    The inaccurate information provided by the Nurses to DFS was the proximate cause of the Children being taken from Smith for an extended period of time.

57.    The Children and Smith were damaged as a result of the Nurses' negligence in an amount to be proven at trial.

## COUNT III

### DEFAMATION (AGAINST THE NURSES AND HOME HEALTH SPECIALISTS)

58.    The plaintiffs repeat and re-allege paragraphs 1 through 57 as if set forth fully herein.

59.    The Nurses made false and defamatory statements to DFS, including statements that Smith abused the Children.

60.    The false and defamatory statements were told by the Nurses to representatives of DFS.

61.    The Nurses knew or should have known the statements made to DFS and/or its representatives were false.

62.    Smith's reputation has been harmed as a result of the false and defamatory statements made by the Nurses.

63.    The statements made by the Nurses were not only false, but they also imputed a criminal offense.

64.    In addition to the harm to Smith's reputation, Smith is unable to find work comparable to that which she had enjoyed prior to November, 2005.  Smith was a well known member of the nursing and non-profit community.  The nursing community in Delaware is a tight-knit community and many members of the community became aware of the allegations levied against Smith.

65.    The harmful, false, and defamatory statements made by the Nurses, proximately caused Smith to suffer damages in an amount to be proven at trial.

## COUNT IV

### MALICIOUS PROSECUTION (AGAINST THE NURSES AND HOME HEALTH SPECIALISTS)

66.    The plaintiffs repeat and re-allege paragraphs 1 through 65 as if set forth fully herein.

67.    There was no probable cause to believe Smith abused her children.

68.    The Nurses procured the initiation of abuse proceedings against Smith and sought the initiation of proceedings for an improper purpose.

69.    The abuse proceedings were not substantiated.

70.    The abuse proceedings were terminated in favor of Smith.

71.    The Nurses acted in bad faith when contacting DFS concerning the alleged abuse.

72.    The plaintiffs were damaged in an amount to be proven at trial.

## COUNT V

### MALICIOUS PROSECUTION (AGAINST FINN AND DFS)

73.     The plaintiffs repeat and re-allege paragraphs 1 through 72 as if set forth fully herein.

74.     Finn initiated proceedings against Smith.  Finn could not reasonably have believed there were facts to support the allegations of child abuse. Lacking probable cause, Finn initiated proceedings against Smith.

75.     The proceedings were not initiated for a proper purpose.

76.     The proceedings did not result in a substantiation of child abuse.

77.     The proceedings were terminated in favor of Smith.

78.     Smith was damaged in an amount to be proven at trial.

## COUNT VI

### WRONGFUL USE OF CIVIL PROCEEDINGS (AGAINST FINN AND DFS)

79.     The plaintiffs repeat and re-allege paragraphs 1 through 78 as if set forth fully herein.

80.     Finn initiated proceedings against Smith.  Finn could not reasonably have believed there were facts to support the allegation of child abuse.  Lacking probable cause, Finn initiated proceedings against Smith.

81.     The proceedings were not initiated for a proper purpose.

82.     The proceedings did not result in a substantiation of child abuse.

83.     The proceedings were terminated in favor of Smith.

84.     Smith was damaged in an amount to be proven at trial.

## COUNT VII

### VIOLATION OF 42 U.S.C. § 1983 – DEPRIVATION OF CIVIL RIGHTS FOR TAKING THE CHILDREN/VIOLATING PRIVACY (AGAINST ALL DEFENDANTS)

85.     The plaintiffs repeat and re-allege paragraphs 1 through 84 as if set forth fully herein.

86.     The Nurses knowingly and voluntarily used Finn and DFS to take the Children from Smith and/or to harm Smith or the Children.

87.     Finn acted under color of state law when she initiated proceedings against Smith.

88.     The Defendants acted in bad faith when initiating proceedings, or causing proceedings to be initiated, against Smith.

89.     The Defendants' interfered with Smith's right to work, right to raise her children, right to privacy, and right of family association, and abused authority.

90.     Finn acted in bad faith by initiating abuse proceedings against Smith when she knew or should have known the allegations were false.   Finn abused her authority by knowingly acting without probable cause in initiating abuse proceedings against Smith.

91.     The Nurses willfully participated in joint action with Finn and/or DFS and willfully collaborated and/or jointly engaged with Finn and/or representatives of DFS to deprive Smith of the civil rights identified herein.

92.     Finn purported to act in her official capacity when she wrongfully initiated abuse proceedings against Smith.

93.     The plaintiffs were damaged in an amount to be proven at trial.

## COUNT VIII

### VIOLATION OF SMITH'S CIVIL RIGHTS
### FOR ADDING HER NAME TO THE REGISTRY (AGAINST FINN AND DFS)

94.    The plaintiffs repeat and re-allege paragraphs 1 through 93 as if set forth fully herein.

95.    The petition to add Smith's name to the Registry was reviewed and denied.  Irrespective of the fact the petition to add Smith's name to the Registry was denied, Finn caused Smith's name to be added to the Registry.  This intentional abuse of authority by Finn shocks the conscience and deprived Smith of numerous potential interests, as set forth herein.

96.    As a result of her name being added to the Registry, Smith has suffered harm to her reputation and an inability to find and secure gainful employment, and other damages.

97.    Smith has suffered damages to interests protected by law.

98.    Smith has suffered damages in an amount to be proven at trial.

## COUNT IX

### DEFAMATION/LIBEL FOR PUTTING SMITH'S
### NAME ON THE REGISTRY (AGAINST FINN AND DFS)

99.    The plaintiffs repeat and re-allege paragraphs 1 through 98 as if set forth fully herein.

100.    Finn knew or should have known Smith did not engage in child abuse after the petition to put Smith's name on the Registry was denied.

101.    Smith did not abuse her children.

102.    Finn acted in bad faith by putting Smith's name on the Registry.

103.    Smith has suffered damages to her reputation, and other harm as a result of her name being put on the Registry.

104.    Smith has been damaged in an amount to be proven at trial by her name being inappropriately placed on the Registry.

## COUNT X

### INTERFERENCE WITH CUSTODY (AGAINST ALL DEFENDANTS)

105.    The plaintiffs repeat and re-allege paragraphs 1 through 104 as if set forth fully herein.

106.    The Nurses knew or should have known the statements of child abuse alleged against Smith were false.  The Nurses, collaborating with Finn, attempted to, and did, interfere with Smith's custody of her children, as a result of the Children being placed in the custody of DFS.

107.    The Children were placed in the care of DFS as a result of statements which were false, and the Defendants knew or should have known the statements were false.

108.    The plaintiffs were damaged in an amount to be proven at trial.

## COUNT XI

### CIVIL CONSPIRACY (AGAINST ALL DEFENDANTS)

109.    The plaintiffs repeat and re-allege paragraphs 1 through 108 as if set forth fully herein.

110.    The Nurses and Finn knowingly and actually confederated, cooperated, knowingly participated, and conspired to violate the plaintiffs' civil rights, interfere with Smith's custody of her children, damage Smith's reputation, falsely imprison the Children, invade the

plaintiffs' privacy, and maliciously prosecute Smith due to their bad faith and willful misconduct.

111.    The plaintiffs were damaged in an amount to be proven at trial.

## COUNT XII

### SUBSTANTIVE DUE PROCESS
### (AGAINST FINN AND DFS)

112.    The plaintiffs repeat and re-allege paragraphs 1 through 111 as if set forth fully herein.

113.    The Family Court denied the petition to place Smith on the Registry.

114.    Finn caused Smith's name to he placed on the Registry irrespective of the Court's order to the contrary.

115.    Finn knowingly and willfully acted in bad faith by placing Smith's name on the Registry.

116.    It shocks the conscience that Finn placed Smith's name on the Registry irrespective of the Court's order.

117.    Smith has suffered reputational, financial, and other harm as a result of her name being placed inappropriately on the Registry.

118.    Smith has been damaged in an amount to be proven at trial.

## COUNT XIII

### NEGLIGENT HIRING
### (AGAINST HOME HEALTH SPECIALISTS AND DFS)

119.    The plaintiffs repeat and re-allege paragraphs 1 through 118 as if set forth fully herein.

120.    Home Health Specialists and DFS had and have a duty to use reasonable care when hiring employees.

121.    Home Health Specialists breached its duty of reasonable care when hiring the Nurses as demonstrated by the Nurses' bad faith conduct towards the plaintiffs.

122.    DFS breached its duty of reasonable care when hiring as demonstrated by Finn's bad faith conduct towards the plaintiffs.

123.    Home Health Specialists' hiring of the Nurses was the proximate cause of the plaintiffs being exposed to the Nurses' bad faith conduct.

124.    DFS' hiring of Finn was the proximate cause of the plaintiffs being exposed to Finn's bad faith conduct.

125.    The plaintiffs were damaged in an amount to be proven at trial.

## COUNT XIV

### NEGLIGENCE
### (AGAINST HOME HEALTH SPECIALISTS)

126.    The plaintiffs repeat and re-allege paragraphs 1 through 125 as if set forth fully herein.

127.    Home Health Specialists was informed by Mia Heutt that Elliott struck M.K. on at least one occasion. Home Health Specialists never investigated the report and never notified Smith of the report.

128.    Home Health Specialists had a duty to investigate the report and notify Smith of the report.

129.    Home Health Specialists breached this duty by not investigating the report or notifying Smith of the report.

130.    If Smith was aware Elliot struck one of the children, she would not have permitted Elliott to be in her home.

131.    Home Health Specialists' failure to investigate the report or notify Smith of the report was the proximate cause of the Nurses being able to continue serving in Smith's home such that they had access to the Children and were able to contact DFS and set in motion the course of events described herein.

132.    The plaintiffs were damaged in an amount to be proven at trial.

WHEREFORE, the plaintiffs demand judgment against the Defendants as follows:

A.    For past present and future lost wages and contributions, including but not limited to wages and benefits;

B.    For loss of all medical, long term disability, life insurance, visual and dental benefits;

C.    For compensation for emotional and psychological damage;

D.    For punitive damages;

E.    For an award of costs;

F.    For an award of pre-judgment and post-judgment interest

G.    For attorneys' fees; and

H.    For any other relief the Court deems just and appropriate.

- SIGNATURE ON NEXT PAGE –

MORRIS JAMES LLP


Richard Galperin (#390)
rgalperin@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899
(302) 888-5849
Attorneys for Plaintiffs

Dated:  September 28, 2007

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DIANE SMITH, individually and as guardian for
A.K., S.K. and M.K.

**DEFENDANTS**

STATE OF DELAWARE, DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH & THEIR FAMILIES, DIVISION OF FAMILY SERVICES; KATHLEEN FINN, individually and in her official capacity; HOME HEALTH SPECIALISTS; DORIS ELLIOTT; and LINDA BRASBURGER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY).**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
Richard Galperin/James H. McMackin, III
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
302-888-6800

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury Med. Malpractice
☐ 365 Personal Injury – Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☒ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**HABEAS CORPUS:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R. R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt Relations
☐ 730 Labor/Mgmt Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS – Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Arts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Civil rights action under 28 U.S.C. §§ 1331 and 1343

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE
September 28, 2007

SIGNATURE OF ATTORNEY OF RECORD
_Jas. H. McMackin III_

FOR OFFICE USE ONLY

RECEIPT# _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 2 _____ COPIES OF AO FORM 85.

_____9/28/07_____
(Date forms issued)

_____Mike Bolish_____
(Signature of Party or their Representative)

_____Mike Bobish_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action