IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DIANE SMITH, Individually and as guardian for A.K., S.K. & M.K., ET AL., | : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 07-600-JJF-LPS |
| STATE OF DELAWARE, DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH & THEIR FAMILIES, DIVISION OF FAMILY SERVICES, ET AL., | : : : : : | |
| Defendants. | : | |

## MEMORANDUM ORDER

The Court, having considered the parties' letter briefs (D.I. 69, 72, 73, 80, 81, 82), and having previously appointed Thomas J. Allingham II, Esq., as guardian *ad litem* for the minor Plaintiffs (D.I. 88), hereby rules as follows:

The Parties

The Plaintiffs are Diane Smith ("Smith") and her three minor children, M.K., S.K., and A.K. (the "Children," and, collectively with Smith, "Plaintiffs"). The State Defendants are the State of Delaware, its Department of Services for Children, Youth & Their Families ("DSCYF") Division of Family Services ("DFS"), and Kathleen Finn. The HHS Defendants are in-home nurses Linda Brasberger and Dora Elliott and their employer, Home Health Specialists.

Should This Case Be Dismissed?

The Court has an obligation at all times to examine whether it has jurisdiction over a matter before it. *See, e.g., Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 420 (3d Cir.

1

2003). Accordingly, the Court directed the parties to address whether any portion of the Plaintiffs' action is barred by the *Rooker-Feldman* doctrine. The parties have provided responses on this issue and on the related issue of whether some portion of this case must be dismissed due to *Younger* abstention, as there are pending proceedings in the Delaware Family Court. The Court concludes that no portion of the Plaintiffs' claims should be dismissed due to either *Rooker-Feldman* or *Younger*.

The *Rooker-Feldman* doctrine precludes federal district and circuit courts from sitting as effective courts of appeals from state court judgments. *See In Re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997). The "doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

The Plaintiffs explain that the Family Court made two rulings: it entered the parties' stipulation to dependence (i.e., that there was a basis for the State to take temporary custody of the minor Plaintiffs) and it denied DFS's request to put Smith on the Child Abuse Protection Registry ("Registry"). (D.I. 69 at 2) As the Plaintiffs further note, they "are not appealing the Family Court judgments." (D.I. 82 at 3) They cannot challenge the stipulation; and they have no reason to challenge the Registry ruling, as Smith was the prevailing party. Instead, in the instant lawsuit, the Plaintiffs seek to press their allegations that the State Defendants and the HHS Defendants "conspired and lied in order for the State to obtain custody (albeit temporary) of the Children," "placed Smith on the Registry on an interim basis despite the fact the Family Court denied the petition to do so," and "failed to promptly remove her from the Registry." (*Id.*)

Accordingly, prosecution of this case does not run afoul of the *Rooker-Feldman* doctrine. *See Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 491-92 (3d Cir. 1997) (holding that §1983 damages action is not "functional equivalent" of appeal from state court judgment).

Given the important principles of comity and federalism, the *Younger* abstention doctrine generally requires federal courts to abstain from adjudicating a matter where there are (1) ongoing state judicial proceedings, (2) implicating important state interests, and (3) in which there is an adequate opportunity to raise constitutional challenges. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434-37 (1982). The State Defendants contend that these three requirements are satisfied given that DFS's Petition for Substantiation of child abuse and neglect – and its request that Smith be placed on the Registry – remains pending before the Family Court. (D.I. 73 at 3, 11; *see also* D.I. 82 at 4)[1] They add that the State has significant interests in "enforcement and maintenance of a child protection registry" and "in preserving the authority" of Delaware's judicial system and insist that the Plaintiffs may present their constitutional claims to the Family Court. (D.I. 73 at 11-12)

The Court does not agree that *Younger* abstention is appropriate in this case. The pending Family Court proceedings, which are concerned solely with the narrow issue of whether to place Smith on the Registry, do not provide an adequate opportunity for the Plaintiffs to present their constitutional claims. Among other problems, the Plaintiffs could not in Family Court obtain the

---

[1]According to the Plaintiffs, a hearing was held in Family Court last week on February 11, 2009, at which the State's Petition for Substantiation was denied. (D.I. 94) The Plaintiffs add that there are now no pending state court proceedings. (*Id.*) Assuming this is correct, it further confirms the inapplicability of *Younger* abstention here.

damages they seek here and could not join the HHS Defendants. (D.I. 82 at 3-5)

Should Plaintiffs' Counsel Be Disqualified?

In the Family Court proceedings, Mr. Galperin represented Smith – who is the adult Plaintiff in the instant action – as well as the father of the Children. (D.I. 73 at 3) Mr. Allingham was the Children's attorney in the Family Court proceedings (and also served as guardian *ad litem* in the Family Court). The State Defendants and HHS Defendants (collectively, the "Defendants") seek to disqualify Mr. Galperin and his law firm from representing either the Children or Smith in this case. The Court rejects these requests.

Citing Rule 1.7. of the Delaware Lawyers' Rules of Professional Conduct ("D.L.R.P.C."), the Defendants argue that Mr. Galperin cannot represent the Children here because there is a "concurrent conflict of interest" between the interests of the Children and the interests of Smith. (D.I. 73 at 4) Illustrative of this conflict, the Defendants say, is that Smith has not ruled out calling the Children as witnesses at trial, which would force the Defendants to depose the Children, with all the attendant trauma that could involve. (D.I. 73 at 5-6) As the State Defendants put it, "The risk here is that the children are being used as pawns by the mother for purposes of this litigation, without due regard for the effect such exposure to strangers and forced recounting of unpleasant episodes might have on them." (D.I. 73 at 5-6)

In fact, however, the Plaintiffs attest that they "absolutely will not call the children as witnesses." (D.I. 82 at 1) Moreover, should this situation change, or should anything occur in the litigation that looks as if it is unfairly prejudicing the Children, Mr. Allingham, as their guardian *ad litem*, will be in a position to take appropriate action. The Court is confident that Mr. Allingham will, as necessary, weigh in on the Children's behalf should any party seek

discovery from the Children, seek to call one or more them as witnesses at trial, or propose a settlement of their claims. If, at any time, Mr. Allingham believes that Mr. Galperin is unable to adequately represent the legal interests of the Children while also representing the legal interests of Smith, Mr. Allingham may raise that issue with the Court.

The Defendants also seek to disqualify Mr. Galperin from representing Smith, primarily because they believe he will be a witness at trial. (D.I. 73 at 6; D.I. 72 at 4-5) Applicable here is D.L.R.P.C. Rule 3.7, which provides that "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." The Court finds that Mr. Galperin is not "likely" to be a "necessary" witness if this case reaches trial.

The State Defendants' contention to the contrary is based on their "reserv[ation] [of] the right to call Mr. Galperin as a witness to prove what the [stipulation] Order reflects." (D.I. 73 at 6) The Family Court stipulation Order states: "at the time DSCYF filed for custody of the [C]hildren, the Department believed [Smith] was not providing appropriate supervision of the children. The parents stipulated to a finding of probable cause . . . ." (D.I. 82 Ex. E) The State Defendants will be able "to prove what the Order reflects" by introducing the Order itself, or by obtaining a stipulation from Plaintiffs. It is simply not likely that Mr. Galperin will be a necessary witness on this issue.

The HHS Defendants add that Mr. Galperin's testimony will be necessary because he gathered information from medical and mental health professionals relating to the alleged damages suffered by the Children. (D.I. 72 at 5) But nothing in the record indicates that Mr. Galperin's work in this regard has been any different from the efforts normally undertaken by an attorney to collect evidence to support his client's case. That role does not render Mr. Galperin a

witness; instead, the medical and mental health professionals to whom he spoke would appear to be the competent witnesses. If there were any doubt on this point, it is eliminated by the Plaintiffs' insistence that Mr. Galperin "was not an eye witness and has no first hand knowledge concerning any of the events giving rise to this litigation." (D.I. 69 at 1) Plaintiffs will not call him at trial. (*Id.*)

In a related argument, the Defendants refer to Smith's January 2009 deposition in this matter, in which she purportedly "attempted to equivocate as to the positions taken, on the record, by her lawyer" during the 2005 Family Court proceedings, and she "indicated that much of the factual information in the Complaint was provided by her attorneys." (D.I. 81 at 3; *see also* D.I. 80 at 1) The Court does not have access to the deposition testimony and cannot fully evaluate these contentions. However, even accepting the State Defendants' characterization of the deposition, it is plain that the positions Mr. Galperin took on behalf of Smith are "on the record," and, thus, can be proven by the Defendants through introduction of that record. With respect to the source of the factual allegations in the Complaint, the Court reiterates that the Plaintiffs have represented that Mr. Galperin "was not an eye witness and has no first hand knowledge concerning any of the events giving rise to this litigation." The Court has no reason to doubt this representation. It is unnecessary to depose Mr. Galperin simply to confirm his lack of knowledge.

Finally, the Defendants focus on a letter Mr. Galperin wrote to the State's attorney in 2006, in which Mr. Galperin noted the State's "initial good faith efforts" with respect to the Children's situation. (D.I. 74 Ex. F) Nothing about this letter, however, renders Mr. Galperin a likely or necessary trial witness. The Plaintiffs concede here that "DFS's good faith initially is

6

not questioned. What they did thereafter is what this case is all about." (D.I. 69 at 2)[2] While the State Defendants assert that Mr. Galperin's statement in his letter "cannot possibly be reconciled with the filing of this lawsuit," and suggest he must be disqualified because it is unethical "to advocate claims in a Complaint which are irreconcilable with his prior words and actions on behalf of the [same] client," (D.I. 73 at 7-8), it appears, instead, that the letter referred to a different time period than that to which the lawsuit relates. In any case, nothing about the letter precludes Mr. Galperin's representation of Smith in the instant suit.

Conclusion

For the foregoing reasons, the Defendants' requests that this action be stayed or dismissed pursuant to the *Rooker-Feldman* or *Younger* abstention doctrines is DENIED. The Defendants' request that Mr. Galperin be disqualified from representing Smith or the Children is likewise DENIED.

DATED: February 17, 2009

                                                  Honorable Leonard P. Stark
                                                  United States Magistrate Judge

---

[2]In subsequent correspondence, the Plaintiffs have retreated somewhat from this initial assertion, now stating: "Defendants acted (though possibly not from the onset) in bad faith, which is the basis for Plaintiffs['] claims in the first place." (D.I. 82 at 5 (emphasis added)) It could be that by "Defendants" Plaintiffs are here referring to the HHS Defendants and adhere entirely to their previous statement that DFS's initial good faith is not disputed. In any event, Plaintiffs' concession about DFS's initial good faith may, as the Defendants point out, have implications for the sustainability of most or all of their claims. (D.I. 81 at 2; D.I. 80 at 2-4) That issue is not presently before the Court. In this regard, it is also worth noting that in the same letter on which the Defendants rely, Mr. Galperin also wrote: "[T]here was at best a gross overreaction which, instead of offering protection to children, has caused the unnecessary separation of children from a loving mother." (D.I. 74 Ex. F)